North Missouri Railroad Co. v. Winkler.

———————

NORTH MISSOURI RAILROAD COMPANY, Plaintiff in Error, *v.* WILLIAM WINKLER, Defendant in Error.

*Banking, illegal.*—The act of 1855 to prevent illegal banking is a revision of the law of 1845.  Corporations chartered prior to the act of 1855 are subject to the provisions of the 4th section, prohibiting the passing or receiving of bank notes or other paper currency under the denomination of five dollars. (R. C. 1855, p. 286, § 4 & 9.)

*Corporation—Forfeiture.*—Under the act to prevent illegal banking, a violation thereof may be pleaded in bar of any suit brought by a corporation, and it is not necessary that the franchise should have been forfeited upon direct proceedings for that purpose.

*Corporator—Estoppel.*—Under the illegal banking act of 1855, a stockholder sued for his subscription is not estopped to plead the violation of the act by the corporation in bar of the suit.   (R. C. 1855, ch. 16, § 4 & 9.)

*Corporation—Agents.*—A corporation acts only by its agents; the acts of the agents, therefore, within the scope of their authority, will bind the corporation.   (Christian University v. Jordan, 29 Mo. 68, qualified and affirmed.)

*Error to Macon Circuit Court.*

*Carr,* for plaintiff in error.

I. The act to prevent illegal banking and the circulation of depreciated paper currency does not apply to the plaintiff.

The charter of the North Missouri Railroad Company was granted by act of the Legislature, approved March 3, 1851, (Sess. Acts of 1851, p. 484, § 1,) by which the right was conferred upon the company to " be able in law and equity to *make contracts*" and to " *sue.*" The act to prevent illegal banking and the circulation of depreciated paper currency was approved December 8, 1855, more than four years after the granting of the charter of the plaintiff.   Hence the violation of this act cannot be pleaded as a bar by defendant to plaintiff's suit.

1. It would be making that an offence which was no offence at the time of granting the charter, and no offence at the time of making the contract sued on, viz., 23d of December, 1853.

2. It would be making said act *retrospective* in its operation, by allowing a defence to be set up to the cause of action which was no defence at the time of making the contract or granting the charter.

3. Because it would operate as a *denial* of justice in this, that it takes away all remedy upon the contract, without showing any breach of the contract on the part of the plaintiff, and without requiring any performance of the contract on the part of the defendant.

If it be held that said act of 8th December, 1855, can be pleaded in bar to plaintiff's suit, by the act of the Legislature, approved November 23, 1857, (Sess. Acts, 1857, p. 11,) all penalties, forfeitures, &c., incurred under said act were released. (Bank of the State of Mo. v. Bredow, 31 Mo. 523.)

II. The application of said act as a bar to plaintiff's suit impairs the obligation of the contract between plaintiff and defendant, is a denial of justice, and therefore unconstitutional and void.

1. When the State granted plaintiff's charter on the 3d of March, 1851, and the plaintiff accepted the same, it became a contract between the plaintiff and the State. (Dartmouth College v. Woodward, 4 Whea. 518; Currran v. State of Arkansas, 15 How. 304; Redfield on Railways, p. 75; Bailey v. Gentry, 1 Mo. 164; Bumgardner v. Howard Co. Court, 4 Mo. 50, 120; Bronson v. Kinzie, 1 How. 311; McCracken v. Hayward, 2 How. 608.)

III. The defendant, by his subscription to the capital stock of the company, became a member thereof, and the officers and agents of the plaintiff are the officers and agents of the defendant as well as of the plaintiff; their acts are his acts; and allowing him to plead a violation of said act by them would be allowing him to take advantage of his own wrong. (Hannibal, Ralls Co. & Paris Plank Road Co. v. Menefee,

25 Mo. 547; Penobscot R.R. Co. v. White, 41 Me. 512; same v. Dummer, 40 Me. 173.)

1. The capital stock is a trust fund for the payment of corporation debts. The creditors have a right to claim, as against the corporators, their equities to be worked out through the corporation when the trustees or other proper agents for that purpose neglect to call in the debts due by the stockholders of the corporation for stock, so as to enable the company to pay its debts; a creditor, by bill in chancery, can compel such agents to enforce contribution from the stockholders according to their subscription; and if there are no officers or agents to bring the suit, the court will appoint a receiver for that purpose. (Wood v. Dummer, 3 Mason, 308; Nathan v. Whitlock, 9 Paige 152; Angell & Ames on Cor. § 602, 603; Redfield on Railw. 75–77, and authorities there cited in the notes.)

*Prewitt,* for defendant in error.

I. The act applies to this plaintiff. The object of the act was to prevent the passing of small bills and depreciated paper in this State. (R. C. 1855, p. 288, § 9; Christian University v. Jordan, 29 Mo. 68.)

II. The act is constitutional. The Legislature had a right to prohibit the passage of such bills in the State by any one, whether corporation or private person, and to fix such penalty as seemed proper for its violation. The second instruction is based on a false assumption of fact. The illegal banking law was in existence in 1845; the railroad act was passed in 1851. (See R. C. 1845, p. 167, § 4 & 10; also R.R. L. Mo. 32.)

III. The principal is responsible for the acts of his agents. (29 Mo. 68.) All the points in this case seem to be covered by the·case of Christian University v. Jordan, above referred to. The suit in that case was for subscription of stock.

BAY, Judge, delivered the opinion of the court.

The North Missouri Railroad Company brought suit to

recover the sum of one hundred dollars, amount subscribed by defendant to the capital stock of said company.

The cause was submitted to the court upon the following agreed statement of facts:

"North Missouri Railroad Company, plaintiff, v. William Winkler, defendant. It is hereby agreed by the counsel for the plaintiff and defendant to submit the above entitled cause to the court on the following facts: That plaintiff is a corporation by act of the Legislature of the State of Missouri, approved March 3, 1851, under the name and style of the North Missouri Railroad Company, and the several acts amendatory thereof; that on the 23d of December, 1853, defendant subscribed to the capital stock of said railroad company one share, amounting to $100, by which subscription he agreed to pay all calls upon said stock as the same should be made by order of the board of directors of said company, provided the road of said company passed through Macon county, in the dividing ridge which separates the waters of the Mississippi from the waters of the Missouri river, and on or near the route as it had been surveyed in range 14, in said county, previous to defendant's subscribing to the capital stock of said company as aforesaid; that previous to the 22d day of December, 1855, said company permanently located the route of the road of said company through Macon county, on the dividing ridge which separates the waters of the Mississippi from the waters of the Missouri river, and on or near the route as it had been surveyed in range 14, in said county, previous to the defendant's subscribing to the capital stock of said company, as aforesaid; that by order of the board of directors of said company a call of 35 per cent. of said subscription to the capital stock of said company was made on defendant, to be paid on the 22d of December, 1855, said call having been after the permanent location of said road as aforesaid, and due notice thereof given in conformity with the charter and by-laws of the company; and likewise another call of 65 per cent. on said share, to be paid on the 1st of October,

1856, of which due notice was given in conformity with the charter and by-laws of the company.

"It is further admitted that the officers and agents of said company, as such officers and agents, before the commencement of this suit, and between that time and the filing of the defendant's answer herein, passed and received, within the limits of the State of Missouri, bank notes, promising or ordering the payment of money, of a less denomination than five dollars, in the business of the company, but without any express instructions of the company so to do.

"It is further agreed that either party may submit such instructions or declarations of law on the foregoing facts as he may deem proper, except to the ruling of the court therein, and appeal or sue out a writ of error on the judgment which shall be rendered herein to the Supreme Court, and the decision of the Supreme Court thereon shall be final.—March 27, 1861."

Upon the foregoing statement of facts the court found for the defendant, whereupon plaintiff in due time moved for a new trial; which motion being overruled, the cause is brought here by writ of error.

The plaintiff asked the court to declare the law as follows:

"1. The plaintiff is entitled to recover the amount subscribed, and the interest thereon at the rate of six per cent. per annum from the time of the respective calls, notwithstanding the officers and agents of the plaintiff, before the commencement of this suit, and between that time and the filing of the defendant's answer, passed and received in the business of the company, within the limits of this State, bank notes, promising or ordering the payment of money, of less denomination than five dollars.

"2. The plaintiff's charter having been granted previous to the passage of the 'Act to prevent illegal banking and depreciated paper currency,' approved December 8, 1855, the fact of the officers and agents of the plaintiff passing and receiving bank notes, promising or ordering the payment of

money, of less denomination than five dollars, within the limits of this State, before the commencement of this suit, and between that time and the filing of defendant's answer, constitute no bar to plaintiff's right to sue and recover the amount sued for, and the interest thereon.

"3. In the absence of any authority from the plaintiff to its officers and agents to receive and pass bank notes of less denomination than five dollars, promising or ordering the payment of money, within the limits of this State, the law will not presume that such authority was given from the mere fact that said officers and agents did receive and pass such bank notes, as agents for the company, and the court will find for the plaintiff the amount sued for, and the interest thereon, as claimed in the petition.

"4. Said act of December 8, 1855, was not intended to apply, and does not apply, to plaintiff, and the receiving and passing of bank notes of the kind admitted in the agreed statement of facts by the officers and agents of the plaintiff, in the business of the company, within the limits of this State, constitutes no defence to plaintiff's suit, and the court will find for the plaintiff the amount sued for, and the interest thereon, as claimed in the petition."

Which the court refused to do, but, at the instance of defendant, declared the law as follows:

"If the court, sitting as a jury, believe from the facts admitted that the plaintiff, by its officers or agents, before the commencement of this suit, or between that time and the filing of the defendant's answer, within the limits of this State, did pass or receive any bank note, or other paper currency of any kind, promising or ordering the payment of money, of a less denomination than five dollars, it will find for the defendant."

The first ground urged by plaintiff in error for a reversal of the judgment below is, that the act to prevent illegal banking and the circulation of depreciated paper currency has no application to plaintiff, inasmuch as the charter of the North Missouri Railroad Company was granted prior to

the passage of the act of December 8, 1855, relating to illegal banking.

The agreed case shows that the charter was granted March 3, 1851, and defendant's subscription made December 23, 1853. The answer alleges that the passing and receiving of bank notes of a less denomination than five dollars was contrary to the provisions of the statute of December 8, 1855. It is evident that the pleader, in drawing his answer, had solely in view the act of 1855, and the fact that the act of 1855 was a mere revision of the act of March 26, 1845, had escaped his notice. The only difference between the two acts, so far as the defence in this case is concerned, is, that the prohibition in the act of 1845 extends to notes of a less denomination than ten dollars; so that under either act the facts alleged in the answer may be pleaded in bar. They are public acts, and the courts will take judicial notice of them, whether referred to in the answer or not.

The second point urged is that the defendant cannot avail himself of the matter set up in the answer, unless a forfeiture of plaintiff's charter has been adjudged by a court of competent jurisdiction, on information in the nature of a *quo warranto*.

We do not think the point well taken. For the purposes of this defence it is not necessary that an absolute forfeiture should be shown, such as would follow the judgment of a court upon a *quo warranto*.

If such a forfeiture had been adjudged by a court of competent jurisdiction, then such forfeiture might have been pleaded in bar. The language of the act is, that he may plead the forfeiture, or any violation or evasion of the act. The matter set up in bar in this case is a violation of the act in this, that the plaintiff did pass and receive, within the limits of this State, bank notes of less denomination than five dollars. As remarked by Judge Scott, in the case of the Christian University v. Jordan, 29 Mo. 71, "the purpose of the act is accomplished in permitting the forfeiture to operate only so far as to take away the right of action in the

particular cause in which its violation is set up as a defence."

The third of plaintiff's refused instructions was asked upon the supposition that it was incumbent upon the defendant to show affirmatively that plaintiff had authorized and directed its officers and agents to receive or pass notes of a less denomination than five dollars.

This point was raised in Christian University v. Jordan, and this court held in that case that, as corporations were ideal and artificial, and could only act through agents, the act of the agent was the act of the principal, and no proof of express authority to do the act complained of was necessary. In this view we concur, with this qualification, however, that the act of the agent must be such as falls within the scope of his authority. If not within the scope of his authority, it becomes his individual act, and imposes no liability upon his principal.

The next point, and by far the most important in the case, has reference to the relation which the defendant bears to the plaintiff. It is contended, and has been argued with much ingenuity, that the defendant being, by reason of his subscription, a corporator, cannot avail himself of the act in question — that to permit him to do so would enable him to take advantage of his own wrong.

As a general proposition, and in the absence of any express legislative authority, this may be true; but we are in this case called upon to interpret a particular statute, and to do so properly it becomes important to inquire into the motives and reasons which led to its enactment.

It is well known that our State Bank was prohibited by charter from issuing notes of a less denomination than ten dollars, though by subsequent legislation permitted to issue notes of the denomination of five dollars. As a necessary consequence, the State became flooded with the small notes of foreign banks, and as those banks (many of which were wholly irresponsible) became discredited, the holders of their notes, comprising chiefly our laboring population, were

forced to submit to a ruinous loss. Corporations, brokers and exchange dealers were employed as agents of these banks to aid in the circulation of their notes, and in buying them up for the banks when they became discredited, realizing large profits both for themselves and the banks. It was a well devised system to defraud our people, and one which called loudly for legislative interposition.

The only practicable relief which suggested itself to our General Assembly was to prohibit, by strong penal enactments, corporations, banks, brokers and exchange dealers from receiving or paying out such notes. As long as they could be prevented from dealing in them it was believed that their circulation would be very limited. The object of the statute, therefore, was not to shield a dishonest debtor, but to punish the corporation for violating the law. It is in the nature of a penal act, and if the Legislature should relieve the company from all the penalties, the defendant could not complain, as he has no vested right to be affected. It was a law enacted for the public good; and if it is so framed as in particular cases to afford an escape for a dishonest debtor who seeks to avoid a just liability, the fault is with the law-making power, and we are powerless to correct it. The act provides that any evasion or violation of any part of the act by a corporation may be pleaded in bar to any suit brought by them. No reservation whatever is made, and yet we are called upon, by mere construction, to limit its operation to a particular class of cases. Looking, then, at the phraseology of the act, and the end sought to be accomplished by it, we are of opinion that it may be pleaded by the defendant as well as by a person having no interest in the corporation.

The other judges concurring, the judgment of the court below will be affirmed.